IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KELLY KLEIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. _____ |
| | : | |
| SINCLAIR BROADCAST GROUP, INC. | : | **DEMAND FOR JURY TRIAL** |
| and RING OF HONOR WRESTLING | : | |
| ENTERTAINMENT, LLC, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

COMES NOW Plaintiff Kelly Klein, by and through her attorneys, Julian A. Haffner and the law firm of YK Law, LLP, and Stephen P. New and the law firm of New, Taylor & Associates, and files this Complaint against Defendant SINCLAIR BROADCAST GROUP, INC. and Defendant RING OF HONOR WRESTLING ENTERTAINMENT, LLC for Declaratory Judgment Finding Arbitration Agreement Void or Voidable; Declaratory Judgment Establishing that Plaintiff is an Employee of Defendants; Declaratory Judgment Establishing that the Provisions of the Agreement and Amendment Relating to Klein's Classification as an Independent Contractor are Void as against Public Policy; Declaratory Judgment and Claim for Damages Establishing that Defendants are Jointly And Severally Liable; Declaratory Judgment and Claim for Damages Establishing Royalties Due; Breach of Implied Contract (In the Alternative); Failure to Provide a Safe Place of Employment; Violation of State and Federal Equal Pay Acts; Sexual Harassment (In the Alternative); and, Abusive Discharge (In the Alternative), and in support thereof Plaintiff Kelly Klein based upon actual knowledge with respect to her own acts and upon knowledge, information and belief with respect to all other matters, alleges as follows:

## Jurisdiction and Venue

1.      Plaintiff Kelly Klein ("Klein") is an individual who is a resident of the State of Ohio and who, at all times relevant herein, resided in the State of Ohio.

2.      Defendant Sinclair Broadcast Group, Inc. ("Sinclair") is a corporation formed under the laws of the State of Maryland with its principal place of business located at 10706 Beaver Dam Road, Cockeysville, Maryland 21030 in Baltimore County, Maryland.

3.      Defendant Ring of Honor Wrestling Entertainment, LLC ("ROH") is a limited liability company formed under the laws of the State of Maryland with its principal place of business located at 10706 Beaver Dam Road, Suite 201, Cockeysville, Maryland 21030 in Baltimore County, Maryland.

4.      ROH is a subsidiary of Sinclair. Sinclair, as parent company, is so closely related and integrated to ROH, the subsidiary, as to constitute a single integrated enterprise, and thus, they are jointly and severally liable for their wrongful acts.

5.      Jurisdiction is predicated upon 28 U.S.C. § 1332.

6.      Defendants are each subject to this Court's personal jurisdiction because they were formed under the laws of the State of Maryland, have their principle places of business in Maryland, and engaged in acts in Maryland that gave rise to the claims in this action.

7.      The amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

8.      Jurisdiction is also predicated upon 28 U.S.C. § 1331 as Plaintiff claims damages for violation of the Equal Pay Act, 29 U.S.C. § 206(d).

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2).


**The Parties**

2

10.    Klein is a professional wrestler who made her debut in 2006. In 2015, Klein made her debut for ROH as part of the company's "Women of Honor" ("WOH"). WOH is the nomenclature used by ROH to describe ROH's female wrestlers.

11.    Klein was ROH's top female wrestler, as evidenced by the Company anointing her the WOH World Champion a record three times and by the Company asking her to make live and recorded news appearances (print, audio, and visual) to promote and represent Defendants' brands.  ROH's website provides the following information about Klein:

> Known as 'The Gatekeeper' and 'Pretty Badass,' Klein has been dominant since her WOH debut in 2015. With an impressive combination of physicality, mat wrestling and submission mastery, Klein has never (at the time of the article) been pinned or forced to submit in WOH. Her aptly named 'End of the Match' guillotine choke is the most feared maneuver in women's wrestling. In 2017, Klein added Deonna Purrazzo, Jenny Rose, Brandi Rhodes and Stella Grey, among others, to her list of victims, and in Japan, she and Bea Priestley won the Goddess of Stardom Tag League tournament.

(*See,* https://www.rohwrestling.com/news/roh-5-count-top-5-women-honor-competitors).

12.    Sinclair is a publicly traded American telecommunications conglomerate and is the second-largest television station operation in the United States, owning or operating a total of 193 stations across the country in 100 markets covering 40% of American households and is the largest owner of stations affiliated with Fox, ABC and the CW. Sinclair also owns four digital multicast networks, sports-oriented cable networks, a streaming service and four radio stations. (*See,* *https*://en.wikipedia.org/wiki/Sinclair_Broadcast_Group) Sinclair has "invested significant time and energy in expanding the scope and reach of Ring of Honor to a global audience" (*See*, https://www.wrestlinginc.com/news/2018/11/roh-coo-joe-koff-comments-on-sinclair-ceo-calling-ring-of-647650/) and ROH was able to sell out Madison Square Garden one year in advance in merely 11 minutes.

13.     ROH is a professional wrestling company which produces weekly one-hour wrestling programs broadcast on Sinclair Broadcast Stations, as well as syndicated on select TV stations and regional cable systems. ROH weekly shows are also made available world-wide at rohwrestling.com and on the ROH apps. In addition, ROH performs many live events each year in various cities. (*See*, http://sbgi.net/ring-of-honor/.)

14.     Greg Gilliand ("Gilliand") is the General Manager of ROH.

15.     Hunter Johnston ("Johnston") is a booker, creative director, senior producer and/or head trainer at the Baltimore dojo training program for ROH.

16.     Joe Koff ("Koff") is the Chief Operating Officer and Vice-President of Training and Development for ROH. Koff has been with Sinclair since 2003 and he became the Chief Operating Officer of ROH in 2011. Since 2010, he has headed Sinclair University, the Company's in-house sales training program he created. Prior to that and from 2006, he was a Group Manager overseeing multiple Sinclair television markets. From 2003 through 2006, Mr. Koff headed Sinclair's in-house direct mail initiative. (*See,* https://www.prnewswire.com/news-releases/sinclair-names-joseph-koff-vice-president-of-training-and-development-230995651.html.)

17.     Jamar Shipman ("Shipman") is a professional wrestler with ROH who is known in the ring as "Jay Lethal." Shipman signed with ROH in 2011, is one of the most popular wrestlers in the country, and is referred to as "the franchise of Ring of Honor." (*See*, https://www.tampabay.com/arts-entertainment/jay-lethal-set-to-become-first-non-wwe-wrestler-in-nearly-60-years-to-headline-a-show-at-msg-20190329/.) Shipman is a two-time ROH World Champion and holds the record for the longest championship reign in the company's history. Shipman has also wrestled for other wrestling promotions with national and international

television clearances and has appeared in movies (e.g. The Wrestler starring Mickey Rourke), television shoes (e.g. celebrity Family Feud), and video games. (*See*, https://en.wikipedia.org/wiki/Jay_Lethal#Other_media.)

### Factual Allegations

### AGREEMENT AND AMENDMENT

18.     On or about December 20, 2017, Klein and ROH executed a document titled "Independent Contractor Agreement" (hereinafter "Agreement"). The Agreement had an effective date of January 1, 2018 and a termination date of December 31, 2018. A true and accurate copy of that Agreement is attached hereto and incorporated herein as Plaintiff's Exhibit A.

19.      Klein and ROH executed a document titled "Amendment 2019" with an effective date of January 1, 2019 ("Amendment"). The Amendment extended the terms of the Agreement to December 31, 2019 after which the Agreement became a month to month agreement. A true and accurate copy of the Amendm*e*nt is attached hereto and incorporated herein as Plaintiff's Exhibit B.

20.     The Amendment altered the terms of compensation and permitted Klein one opportunity to terminate the Agreement on June 30, 2019, but otherwise incorporated and extended the initial terms of the Agreement.

21.     The Agreement and Amendment provided that ROH could terminate the contract at any time with thirty (30) days written notice. No provision was made for termination by Klein with the exception of the one-time opportunity on June 30, 2019. (*See*, Ex. A at ¶ 1 and ¶ 8 and Ex. B at ¶ 1.)

22.     The Agreement and Amendment contains a non-competition clause that barred Klein from performing services for any company other than ROH that is broadcast on television

and from performing services for World Wrestling Entertainment ("WWE"), WWE's NXT, Impact Wrestling, Dragon Gate USA/EVOLVE, Lucha Underground, FloSports TV or any of the aforementioned companies' affiliates, successors, or assigns; or from performing services that conflicted "in any way with the full and complete performance of Performer's services hereunder, as determined by the Company in its sole discretion." (*See*, Ex. A at ¶ 2.)

23.     The Agreement and Amendment required ROH to provide Klein with travel accommodations, including transportation to and from shows and a double occupancy room for each night of the show. (*See*, Ex. A at ¶ 2.)

24.     The Agreement and Amendment disavowed any requirement to use Klein's services; however, ROH was required to compensate Klein regardless of whether or not she performed. (*See*, Ex. A at ¶ 2.1.)

25.     The Agreement and Amendment obligated Klein to consider, in good faith, other opportunities with other promoters presented to Klein by ROH, provided the terms were similar to the terms in the Agreement and Amendment. (*See*, Ex. A at ¶ 2.1.)

26.     During the time that Klein was performing services for ROH under the Agreement and Amendment, ROH directed and controlled every aspect of Klein's performance of the services including, but not limited to, the following:.

a)  ROH required Klein to wear a specific wardrobe other than the wardrobe Klein developed for herself;

b)  Klein and her opponent were required to have ROH approve the movements of their wrestling performance;

c)  ROH determined the outcome of the wrestling match; and,

d)  ROH required Klein to arrive at a particular time to perform services.

27.     Under the Agreement and Amendment, ROH retained the right to require Klein to participate in certain personal appearances and meet and greet autograph sessions. (*See*, Ex. A at ¶ 4.1.).  Specifically, Klein had no control over how Defendants used her professional wrestling images and likeness. On multiple occasions, Defendants used images and likenesses of Klein, to which she was neither asked for consent, nor would consent have been granted had Defendants sought consent from Klein. Moreover, Klein had no control over whether DVDs, pictures, action figures, or any other of her images or likeness were used, either commercially, or otherwise, nor did she have any control over the use of her images while employed by Defendants.

28.     Pursuant to the Agreement and Amendment, ROH was required to pay Klein royalties from merchandise sales, including but not limited to, t-shirts and "Best of" DVD's. These royalties were to equal 20% of the net profit and paid quarterly. (*See*, Ex. A at ¶ 4.2.)

29.     Pursuant to the Agreement and Amendment, ROH was required to pay Klein royalties from sales of any action figures created in her likeness. These royalties were to be equal to 25% of the net profit and paid quarterly. (*See*, Ex. A at ¶ 9(b.).)

30.     Pursuant to the Agreement and Amendment, ROH retained "the absolute and irrevocable right and permission" to require Klein to "maintain his [sic] availability for and shall render his [sic] performing services in connection with, the rehearsal, performance and broadcast on behalf of or arranged by the Company ('Performances')." (*See*, Ex. A at ¶ 9(a.)(iv).)

31.     Pursuant to the Agreement and Amendment, ROH retained "the absolute and irrevocable right and permission" to assign the rights granted under the contract without Klein's permission. (*See*, Ex. A at ¶ 9(a.)(v).)

32.     Pursuant to the Agreement and Amendment, Klein does not have any right to assign the contract. (*See*, Ex. A at ¶ 21.)

33.     Pursuant to the Agreement and Amendment, ROH retained the right to terminate the Agreement and Amendment for various reasons including the failure "to conduct or finish a performance in accordance with the Company's direction." (*See*, Ex. A at ¶ 15(vi).)

34.     Pursuant to the Agreement and Amendment, ROH retained the right to terminate the Agreement and Amendment for various reasons including jeopardizing "the FCC license of any broadcast station owned or programmed by Sinclair Broadcast Group, Inc." (*See*, Ex. A at ¶ 15(viii).)

35.     The Agreement and Amendment contained a Non-Competition clause whereby Klein was prohibited from providing any services to any other professional wrestling organization, whether directly or through third-party intermediaries. ROH barred Klein from performing services for every other company in the United States where she could earn a decent living (restricting Klein from working for a wrestling company on television thereby restricts her ability to earn a living and survive since the only wrestling companies that can pay a living wage is a company with television clearance). Klein was prohibited from participating in any live or taped appearances, promotions, or any form of media, whether or not related to wrestling, without the consent of ROH.  Further, if the Agreement and Amendment was terminated for a breach by Klein, she was prohibited from providing any services related to entertainment media or distribution. (*See*, Ex. A at ¶ 16.)

36.     The Agreement and Amendment prohibits Klein from acting as an agent for, a consultant to, or as an officer, employee, or other representative of ROH's competitors or prospective competitors without ROH's consent. (*See*, Ex. A at ¶ 25.)

37.     The Agreement and Amendment contains a purported waiver and indemnification for bodily injuries. (*See*, Ex. A at ¶ 19.)

38.     The Agreement and Amendment purportedly requires arbitration for claims arising out of or relating to the Agreement and Amendment. (*See*, Ex. A at ¶ 20, *et seq*.)

39.     Klein received payments under the Agreement and Amendment from Sinclair.

## INJURIES SUFFERED BY KLEIN AND OTHER PERFORMERS

40.      As a result of Defendants' negligence and illegal actions, Klein and other wrestlers suffered many injuries while performing services for ROH.

41.     Although professional wrestling matches are predetermined, the action that occurs in the ring can lead to serious injury. As such, wrestling companies are supposed to maintain proper and adequate medical personnel on site and render proper medical care. ROH did not provide adequate medical supervision, evaluation, or care at wrestling matches for Klein and their other performers.

42.     On or about September 16, 2016, Klein had a wrestling match at the Stage AE venue in Pittsburgh, Pennsylvania and hit her head and neck on a steel guardrail during the match. Nobody employed or engaged by Defendants checked on Klein's condition and no medical staff was available to evaluate her. Immediately following the wrestling match, Klein reported her injury to Whitmer who was Defendants' agent in charge of the match, but no medical treatment was made available. Klein continued to suffer from headaches and pain from the impact of the guardrail through October 2016 so she told Johnston that she was going to seek treatment for the pain. Johnston did not offer any information, guidance or information regarding treatment. Klein sought treatment at her own expense, was never reimbursed any of the costs by Defendants and Defendants never reached out to Klein about her injuries or the costs related thereto.

43.     On or about April 7, 2018 at the UNO Arena in New Orleans, Klein was wrestling another female who kicked Klein in the head and pulled on Klein's head causing a concussion. As

a result of being disoriented from the concussion, Klein was unable to "kick out" of a pin attempt (kick her legs such that her shoulders would be raised from the mat which would signal the referee to stop counting the pin) thereby resulting in the wrong finish for the scripted ending of the match. Despite Defendants knowing that the finish of the match was botched, Defendants did not check on Klein. Klein reported the injury to Defendants' agent in charge of the match, Whitmer, but there were no medical personnel available to address her injury and no medical treatment was rendered. Klein never sought treatment for her concussion.

44.     On or about June 2, 2018, Klein's tooth was broken in a ROH match in the Hammerstein Ballroom at the Manhattan Center in New York City and, again, Klein reported the injury to Defendants' agent in charge of the match, Whitmer, but there were no medical personnel available to address her injury and no medical treatment was rendered. Klein sought medical treatment from a dentist for her injury and the tooth was capped. Despite ROH asking Klein for her x-rays and referencing her broken tooth both on their website and on an episode of their television show (episode 356, air date 7.13.2018), Defendants never followed up to check on Klein, request that she submit her medical bills or to reimburse her.  Per Klein's request, she was eventually reimbursed for the medical treatment related to the chipped tooth.

45.     On or about December 14, 2018, Klein had an in-person conversation with Ian Riccaboni, an announcer for ROH, advising him that many of the female wrestlers did not feel safe in the wrestling ring with women wrestlers who were reckless and not properly trained.  Klein advised Riccaboni that ROH management did not take the safety of their performers seriously otherwise a lot of the female talent engaged by ROH would not be participating in matches. Riccaboni told Klein that he understood the concern but that Todd Sinclair, who was the main booker for female matches, really liked those reckless women wrestlers but that he would have a

talk with him about it (note that in professional wrestling, the "booker" is the person who sets up the wrestling matches, the storylines and the predetermined endings to the wrestling matches).

46.     On or about January 30, 2019, Klein had a conversation with Todd Sinclair in Baltimore, Maryland regarding Klein's safety concerns, specifically female talent being forced to work in matches they felt unsafe in and with people they did not feel safe with. Todd Sinclair told Klein that it was the first he had heard about these issues despite Klein previously overhearing another performer complaining to Mr. Sinclair about certain wrestlers being reckless and unsafe. Mr. Sinclair further explained that the unsafe, reckless women were only booked for a few more dates and asked that Klein work through those dates and that in the future Klein and others would be asked ahead of time if they agreed to work with those problematic performers. Klein had a similar conversation following a March 15, 2019 match in Las Vegas with Todd Sinclair, Johnston, and other ROH agents wherein she was also injured but the conversation fell on deaf ears. Klein did not seek treatment for her injury in the match.

47.     On or about Saturday, April 6, 2019 at a sold-out ROH event at Madison Square Garden in New York City during her women's championship wrestling match, Klein was hurt as a result of a kick to the head. Klein attempted to protect herself by going outside the ring to the floor. Klein was outside the ring on the floor when the other female wrestler climbed to the top of the ring and dived on Klein. Klein caught the other wrestler to prevent her from being injured, but Klein hit her head during the catch. Klein remembers telling someone who walked by her that she needed a minute to recover. Klein also attempted to let the referee know she was hurt, but she cannot remember how long she was dazed and/or unconscious. Klein finished the match and was surprised that neither the referee nor any other representative of ROH was there to check on her. Instead, Defendants permitted wrestlers to enter the ring and perform, including a wrestling move

11

to Klein, despite Klein remaining injured in the ring. After the match, someone Klein did not recognize told her to go do an interview.

48.     On or about September 28, 2019, another female wrestler struck her head during a match. Klein sent a text message to Gilliand. He said it was a "judgment call" and that Gary (member of management) was on-site No management ever came to check on the injured wrestler who was being seen by EMT's.

49.     On or about October 12, 2019 in New Orleans, Klein discovered that her opponent was not up-to-date on her bloodwork, which is required for licensing in various states. Defendants are responsible for ensuring that all required bloodwork is completed.

50.     On or about October 26, 2019 in Newport, Wales, Klein was defending her title against Lana Austin.  During the match, Austin injured Klein's head, which left Klein confused and disoriented. She continued wrestling approximately six more minutes.  Klein believes she informed Marty Scurll   she was injured, but she was talking incoherently and was unable to form sentences.  After the match, she was lying on the floor in the dressing room for an hour and after people heard her rambling incoherently for almost an hour, Mandy Leon (another wrestler) went to get help. Nobody from management ever came to check on Klein. EMT's arrived to check on her after one hour passed.

51.     On or about November 7, 2019, Klein met with Koff regarding, in part, safety issues surrounding the wrestling performances. Koff stated that a concussion protocol existed and that medical staff were always available. Klein advised him that medical staff was not always available nor were they identified to Klein or the other wrestlers. Klein further explained that none of the wrestlers were aware of a concussion protocol or that medical staff was always available.

**DISCRIMINATION AND HARASSMENT**

12

52.     During the time that the Agreement and Amendment was in effect, Klein and all other female wrestlers were paid a lower wage than their comparable male counterparts.

53.      On or about January 13, 2017, while Klein was in a hot tub near the pool of a hotel where the wrestlers were staying the night before an event, Shipman approached Klein and, while leering at her in a way that made Klein uncomfortable, started harassing her by asking her questions about whether her boyfriend was there, if she was staying in the hotel alone and how long she would be at the hotel.  Shipman's behavior made Klein very uncomfortable.

54.     On or about January 25, 2017, Klein received an email from ROH management advising her and the other wrestlers that Shipman would be the new agent assigned to work with the female wrestlers. One day later, Klein responded to the e-mail and explained that she had witnessed and experienced several situations with Shipman that made her uncomfortable to work with him. She advised ROH management that she was not willing to work with Shipman and requested that another agent be assigned to her matches. Klein went on to explain that she had not expressed this sooner for fear of backlash or retaliation.

55.     In February of 2017, BJ Whitmer, another male wrestler signed to ROH, was informed by Shipman that Johnston informed Shipman that Klein had complained about him.

56.     In July of 2018, Sinclair, by and through their human resources department, spoke with Klein regarding another female wrestler's complaints regarding Shipman. Klein informed the department of her situation with Shipman in 2017 and was informed that no information had been received and no investigation was done. Klein also informed the department that Shipman knew she accused him of sexually harassing behavior. (*See*, https://theringreport.com/indy_wrestling/taeler-hendrix-accuses-jay-lethal-of-derailing-her-career-in-ring-of-honor-a4328#gs.d07e44.)

57.     On or about November 3, 2018, a meeting between the female wrestlers and ROH management occurred. Todd Sinclair, Koff, Riccaboni, and Johnston were present. The discussion centered around the disparate treatment between the male and female talent of ROH despite the success of the female division of ROH. Specifically, the female talent discussed the lack of storylines; the way women were portrayed; the amount of television exposure, and why they were not being represented more in the marketing of the show. Management advised the female wrestlers that there was not enough time on the show so management was forced to think outside the box, producing YouTube content and social media marketing regarding the female talent.

58.     On or about December 17, 2018, Klein had email correspondence and a phone conversation with Gilliand regarding her salary. Specifically, after she saw the initial offer for $20,000.00 for 2019, she asked if it would be possible for her salary to be increased to $24,000.00. Gilliand rejected this because he stated that all female wrestlers in ROH were paid the same and that if he paid Klein more, then all of the other women wrestlers would have to be paid more. This salary was substantially below the salary that the male wrestlers were paid and the decision to pay the salary was based upon the fact that Klein was a female. Klein was asked to make more appearances, with no limit regarding the frequency of appearances, than the other female talent. Plaintiff learned that at least one male member of ROH talent was paid $184,000.00 and was afforded single-occupancy rooming.

59.     On or about January 30, 2019, Klein had a discussion with Sinclair regarding the lack of creativity in the female talent's storylines as compared to the male talent.

60.     On or about March 7, 2019, Klein was informed by Adam Birch that someone in management did not want her to go to training because Shipman would be there.

61.     On or about September 30, 2019, Klein had a discussion with Lauren Sisselman, a ROH employee who arranges travel, regarding Klein traveling to the dojo in Baltimore to train. Lauren said Gilliand had told her that if Shipman was going to be there, that Klein could not be there and instructed her to wait to confirm Shipman's presence before allowing Klein to come.

62.     On or about November 7, 2019, Klein met with Koff to discuss fair pay and sexual harassment. A human resources employee from Sinclair Broadcasting, Caitlin, was also present. Plaintiff advised Koff that the salaries for the female talent were not comparable to that of the male talent. Further, Klein complained about the sexual harassment by Shipman. Koff said he thought it had been resolved. Plaintiff told him it had not, but Plaintiff had just stopped talking about it because nothing had ever been done. Plaintiff had brought this up to HR in 2018 and that management had revealed her name to Shipman/Jay Lethal, even though there was no formal investigation, which created a hostile work environment for her. Koff stated that there was no documentation for the 2018 claim and that HR was only for employees and she was not an employee. When Klein asked for policies, Koff informed her that her contract was her "handbook."

63.     Plaintiff alleges that the Defendants terminated her contract as of December 31, 2019, because of her complaints regarding the disparate pay for WHO female wrestlers, the lack of safety and medical protocols after Plaintiff suffered the concussion in October of 2019, and the sexual harassment at ROH.

## FIRST CLAIM - DECLARATORY JUDGMENT FINDING ARBITRATION AGREEMENT VOID OR VOIDABLE

64.     For her First Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

65.     This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

66.     An actual justiciable controversy between Klein and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether the arbitration provisions are void or voidable due to duress, ambiguity, unconscionability and/or violation of Maryland public policy.

67.     Defendants presented the arbitration provisions to Klein in conjunction with the Agreement and Amendment. Defendants were in a far superior bargaining position as the opportunities available for professional female wrestlers are limited.

68.     Klein was presented the arbitration provisions by a large corporation with substantial legal resources at its disposal. These provisions were presented on a take it or leave it basis. Klein's unequal bargaining position is illustrated by the fact that the compensation in the Agreement was a paltry $12,000.00 (Twelve Thousand Dollars) per annum.

69.     As a result of the unequal bargaining power, limited opportunities, and take it or leave it basis for the offer, Klein was coerced into agreeing to the arbitration provisions and the provisions are void or voidable.

70.     The arbitration provisions do not set forth adequate rules regarding the initiation and conduct of any arbitration.

71.     The arbitration provisions fail to set forth the costs of arbitration. Based upon information and belief, the costs of the arbitrator could range from $350.00 (Three Hundred Fifty Dollars) to $525.00 (Five Hundred Twenty-Five Dollars) per hour. If Klein is not the prevailing party, then she is liable for all of the arbitration costs, and Sinclair and ROH's attorney fees and expenses. These amounts render arbitration cost prohibitive for Klein as she is unable to afford all of the costs incurred in the arbitration.

72.     The arbitration provisions both require the arbitrators to strictly enforce the terms of the Agreement and Amendment and not modify the terms while, at the same time, granting the

arbitrators the power and authority to award any remedy or judgment that could be awarded by a court of law in Maryland, which would include the power to modify the arbitration provisions and/or Agreement and Amendment. (*See*, Ex. A, ¶ 20.5 and ¶ 20.8).

73.     The arbitration provisions purport to apply to the determination of whether Klein is, in fact, an independent contractor or an employee and its terms purport to prohibit the determination that Klein is an employee as the arbitration provisions attempt to prohibit the modification of the contract.

74.     The State of Maryland has a strong public policy that employees be paid the wages they are due and a strong public policy to ensure that individuals are not misclassified as independent contractors when, in fact, they are employees.

75.     The arbitration provisions are unclear as to whether the Maryland Uniform Arbitration Act ("MUAA") applies.

76.     There exists an actual controversy of a justiciable issue between the Plaintiff and the Defendants within the jurisdiction of the Court involving the determination of whether the arbitration provisions of the Agreement and Amendment are void or voidable, which controversy may be determined by a judgment of this Court.

77.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, Klein in good faith requests that the Court declare that Klein and Defendants are not required to arbitrate any matter arising out of the Agreement and Amendment on the basis that the arbitration provisions contained therein are void.

78.     In the alternative, Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Klein in good faith requests that the Court declare that Klein and Defendants

are not required to arbitrate any matter arising out of the Agreement and Amendment on the basis that the arbitration provisions contained therein are voidable.

## SECOND CLAIM - DECLARATORY JUDGMENT ESTABLISHING THAT PLAINTIFF IS AN EMPLOYEE OF DEFENDANTS

79.     For her Second Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

80.     An actual justiciable controversy between Klein and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether Plaintiff Klein is an employee of Defendants Sinclair and ROH and not an independent contractor.

81.     Sinclair and ROH retained the right to control every aspect of Klein's performance of services for Sinclair and ROH.

82.     Sinclair and ROH controlled Klein's costume for performance; the times for performance; the times she had to be available for other appearances, such as autograph signing; the script for the performance of the wrestling match; the outcome of the wrestling match; and, other entities for which she could perform.

83.     Sinclair and ROH had the right to terminate the relationship, but Klein was given only one date upon which she could terminate the relationship.

84.     Sinclair and ROH could terminate the relationship for cause and subject Klein to a six-month restrictive covenant.

85.     Termination for cause included failing "to conduct or finish a performance in accordance with the Company's direction." (See, Ex. A, ¶ 15(vi).)

86.     There exists an actual controversy of a justiciable issue between the Plaintiff and the Defendants within the jurisdiction of the Court involving the determination of whether Plaintiff

is an employee of Defendants rather than an independent contractor, which controversy may be determined by a judgment of this Court.

87.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Klein in good faith requests that the Court declare that during the entire time that Klein was performing services for ROH and Sinclair, Klein was an employee and not an independent contractor.

### THIRD CLAIM - DECLARATORY JUDGMENT ESTABLISHING THAT THE PROVISIONS OF THE AGREEMENT AND AMENDMENT RELATING TO KLEIN'S CLASSIFICATION AS AN INDEPENDENT CONTRACTOR ARE VOID AS AGAINST PUBLIC POLICY

88.     For her Third Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

89.     An actual justiciable controversy between Klein and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether all of the provisions of the Agreement and Amendment relating to Klein's classification as an independent contractor are void as against public policy.

90.     The State of Maryland espouses a strong public policy requiring that individuals performing services for another be properly classified as an employee or as an independent contractor.

91.     Section 8-205 of the Annotated Code of Maryland defines "independent contractor" for the purposes of unemployment insurance as follows:

(a)  In general. --Work that an individual performs under any contract of hire is not covered employment if the Secretary is satisfied that:

(1)  the individual who performs the work is free from control and direction over its performance both in fact and under the contract;

(2)  the individual customarily is engaged in an independent business or occupation of the same nature as that involved in the work; and

(3)  the work is:

(i)  outside of the usual course of business of the person for whom the work is performed; or
(ii)  performed outside of any place of business of the person for whom the work is performed.

92.      Similar factors are relevant in the area of workers compensation:

LE § 9-202(a) of the Annotated Code of Maryland sets forth a presumption that individuals are presumed to be a covered employee for purposes of workers compensation "while in the service of an employer under an express or implied contract of apprenticeship or hire."  "To overcome the presumption of covered employment, an employer shall establish that the individual performing services is an independent contractor in accordance with the common law or is specifically exempted from covered employment under this subtitle." LE § 9-202(c).

*Injured Workers' Ins. Fund v. Orient Express Delivery Serv.*, 190 Md. App. 438, 460, 988 A.2d 1120 (2010).

93.      "The general trend in Maryland has been to narrowly define 'independent contractor' and to protect employee access to unemployment insurance, workers' compensation insurance, and other benefits." (*See*, *Id.*)

94.       "The Workplace Fraud Act, which became effective on October 1, 2009, makes it a violation to fail to properly classify workers as employees, and imposes penalties on those employers who knowingly misclassify their workers. LE § 9-402.1." (*See*, *Id.*)

95.      The "Recovery of Benefits and Penalties for Fraud Act," which became effective on October 1, 2016, imposes significant civil penalties for knowing misclassification of workers as independent contractors.

96.      Md. Code Ann., Lab. & Empl. § 3-405 renders an agreement to work for less than minimum wage void. Klein worked for less than minimum wage under the Agreement and Amendment.

97.     The Agreement and Amendment clearly misclassifies Klein as an independent contractor when she was, in fact, an employee. Sinclair and ROH retained the right to completely control every aspect of Klein's wrestling performance. Sinclair and ROH also retained the right to prohibit Klein from performing wrestling services for other entities without consent. Sinclair and ROH retained the right to terminate Klein's performance of wrestling for Sinclair and ROH, but denied Klein the right to terminate her provision of services. Sinclair and ROH retained the right to terminate the relationship for cause and imposed a restrictive covenant. Clearly, Klein and the other ROH and WOH wrestling superstars were employees of the Defendants and not independent contractors.

98.     The intent and import of the Agreement and Amendment was to make Klein an employee while misclassifying her as an independent contractor.

99.     The Agreement and Amendment are void as against the public policy requiring the correct classification of employees and independent contractors in the State of Maryland.

100.    There exists an actual controversy of a justiciable issue between the Plaintiff and the Defendants within the jurisdiction of the Court involving the determination of whether all of the provisions of the Agreement and Amendment relating to Klein's classification as an independent contractor are void as against public policy, which controversy may be determined by a judgment of this Court.

101.    Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Klein in good faith requests that the Court declare that all of the provisions of the Agreement and Amendment relating to Klein's classification as an independent contractor are void as against public policy.

**FOURTH CLAIM - DECLARATORY JUDGMENT AND CLAIM FOR DAMAGES ESTABLISHING THAT DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE**

102.    For her Fourth Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

103.    An actual justiciable controversy between Klein and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether Defendants Sinclair and ROH are entitled to the protections afforded separate corporate entities or whether they are not entitled to said protection and are jointly and severally liable for the harm to Plaintiff Kelly Klein.

104.    An actual justiciable controversy between Klein and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether that Defendants Sinclair and ROH are entitled to the protections afforded separate corporate entities or whether they are not entitled to said protection and are jointly and severally liable for the harm to Plaintiff Kelly Klein.

105.    Sinclair, as parent company, is so closely related and integrated to ROH, the subsidiary, as to constitute a single integrated enterprise, and thus, they are jointly and severally liable for their wrongful acts.

106.    Sinclair and ROH misrepresented to Klein that she was an independent contractor rather than an employee, despite Sinclair and ROH retaining the right to control Klein's performance. Klein justifiably relied on these misrepresentations. As a result, Klein was denied the statutory benefits and protections afforded employees in Maryland and denied the benefits provided by Sinclair and ROH to their employees.

107.    There exists an actual controversy of a justiciable issue between the Plaintiff and the Defendants within the jurisdiction of the Court involving the determination of whether Sinclair and ROH are jointly and severally liable to Plaintiff, which controversy may be determined by a judgment of this Court.

104.    Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Klein in good faith requests that the Court declare that Defendants Sinclair and ROH are not entitled to said protection and are jointly and severally liable for the harm to Plaintiff Kelly Klein.

### FIFTH CLAIM - DECLARATORY JUDGMENT AND CLAIM FOR DAMAGES ESTABLISHING ROYALTIES DUE

105.    For her Fifth Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

106.    An actual justiciable controversy between Klein and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether Defendants Sinclair and ROH have paid to Plaintiff Kelly Klein all of the amounts due for Royalties.

108.    Klein is entitled to royalties equal to 20% (Twenty Percent) of the net profits from the sales of t-shirts and "Best of" DVD's featuring her performances.

109.    Based upon information and belief, Klein alleges that she has not received all the royalties due to her from Sinclair and ROH.

110.    There exists an actual controversy of a justiciable issue between the Plaintiff and the Defendants within the jurisdiction of the Court involving the determination of whether Sinclair and ROH are required to pay Klein past due royalties, which controversy may be determined by a judgment of this Court.

111.    Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Klein in good faith requests that the Court declare that Defendants Sinclair and ROH are required to pay Plaintiff Kelly Klein past due royalties.

### SIXTH CLAIM - BREACH OF IMPLIED CONTRACT (IN THE ALTERNATIVE)

112.    For her Sixth Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

113.    If the provisions of the Agreement and Amendment regarding Klein's classification as an independent contractor are void, then an implied contract exists between Sinclair, ROH, and Klein requiring Sinclair and ROH to compensate Klein for the reasonable value of her services, which would not be less than the minimum wage per hour, and to compensate her for overtime. (*See*, Md. Code Ann., Lab. & Empl. § 3-413 and Md. Code Ann., Lab. & Empl. § 3-415.)

114.    Klein conferred benefits upon Sinclair and ROH, which they knew and appreciated.

115.    Sinclair and ROH's retention of the benefits provided by Klein without payment for those benefits would be inequitable.

## SEVENTH CLAIM - FAILURE TO PROVIDE A SAFE PLACE OF EMPLOYMENT

116.    For her Seventh Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

117.    Sinclair and ROH have a statutory and common law duty to provide a safe place of employment for their employees, employees of other entities, and independent contractors.

118.    Sinclair and ROH breached their duties by failing to have a concussion protocol, failing to have medically trained personnel at all wrestling matches, and failing to properly observe other requirements related to maintaining a place of employment.

119.    As a direct and proximate result of Sinclair and ROH's breach of duty, Klein suffered severe and permanent injuries, incurred medical expenses, suffered lost wages, and experienced pain, suffering, inconvenience, and other nonpecuniary damages.  Said damages are continuing in nature and permanent.

## EIGHTH CLAIM - VIOLATION OF STATE AND FEDERAL EQUAL PAY ACTS

120.    For her Eighth Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

121.    Sinclair and ROH discriminated against Klein on the basis of her sex by paying her compensation that was less than were paid to male wrestlers despite the fact that the performance by male and female wrestler requires equal skill, effort, and responsibility, and are performed under similar working conditions.

122.    The disparity in the rate of pay violated federal and state statutes prohibiting discrimination in pay rates based upon sex. (*See,* 29 U.S.C. § 206(d) and Md. Code Ann. Lab. & Empl. § 3-304.)

123.    Sinclair and ROH terminated Klein's employment in violation of Md. Code Ann., Lab. & Empl. § 3-308.

124.     Klein seeks damages as set forth in Md. Code Ann. Lab. & Empl. § 3-307(a) and/or 29 U.S.C. § 206(d) to the extent that a duplication of damages does not occur.

### NINTH CLAIM - SEXUAL HARASSMENT (IN THE ALTERNATIVE)

125.     For her Ninth Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

126.     Plaintiff asserts claims against Sinclair and ROH pursuant to Md. Code Ann. State Gov't. § 20-601, *et seq.* for discrimination on the basis of her sex, a hostile work environment, and retaliatory discharge.

127.    Sinclair and ROH are liable for their own discriminatory and harassing actions and the discriminatory and harassing actions of their supervisors and individuals who directed or evaluated Klein.

128.    As a direct and proximate result of Sinclair and ROH's breach of duty, Klein suffered severe and permanent injuries, incurred medical expenses, suffered lost wages, and

experienced pain, suffering, inconvenience, and other nonpecuniary damages.  Said damages are continuing in nature and permanent.

### TENTH CLAIM - ABUSIVE DISCHARGE (IN THE ALTERNATIVE)

129.    For her Tenth Claim, Plaintiff Kelly Klein incorporates the allegations of all of the foregoing Paragraphs as if fully restated herein.

130.    Sinclair and ROH discharged Klein. The bases for the discharge violated clear mandates of public policy.

131.    A nexus exists between Klein's actions and Sinclair and ROH's decision to discharge her and to not renew her contract.

132.    Klein repeatedly expressed opinions to Sinclair, ROH, and others regarding the actions of Sinclair and ROH. These opinions that were expressed regarded the safety of the professional wrestlers; the inequality in pay; and the sexual harassment occurring in the work environment.

133.    Sinclair and ROH had the right to terminate the Agreement and Amendment for any reason with thirty days' notice.

134.    Sinclair and ROH were the promoters of the wrestling matches in which Klein performed.

135.    COMAR 19.14.08.06(B) requires that the promoter shall be responsible for conducting wrestling contests in a safe, peaceable, and orderly fashion.

136.    Sinclair and ROH failed to conduct the wrestling matches in a safe manner. Klein and other wrestlers suffered injuries from wrestling that were not recognized and not addressed. Sinclair and ROH permitted unsafe wrestling practices to occur and failed to respond to Klein's complaints regarding the unsafe practices.

137.   As a direct and proximate result of Klein's public comments regarding the lack of safety protocols at Sinclair and ROH wrestling events, Sinclair and ROH terminated her contract despite on-going negotiations.

138.   Klein is entitled to compensatory damages directly resulting from the termination of her employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kelly Klein prays that this Court enter judgment in her favor on each and every count set forth above, and award it relief in an amount greater than $75,000, including, but not limited, the following:

(A)   Declaratory judgment from this Court as set forth and requested herein;

(B)   Compensatory damages including, but not limited to past and future medical bills, past and future lost wages, and lost earning capacity;

(C)   Damages as set forth in Md. Code Ann. Lab. & Empl. § 3-307(a) and/or 29 U.S.C. § 206(d);

(D)   Annoyance, aggravation, inconvenience, loss of enjoyment of life, emotional distress; mental anguish;

(E)   Consequential and incidental damages;

(F)   Court costs and expenses incurred in this action;

(G)   Pre and post judgment interest;

(H)   Attorneys' costs and fees;

(I)   All such damages and relief as are available under Maryland Code § 2-305, *et seq.* or other applicable Maryland law; and

(J)   All such other and further relief as this Court deems just and proper.

Dated: January 20, 2021                         Respectfully submitted,

_____
Julian A. Haffner
9841 Washingtonian Blvd., Suite 200
Gaithersburg, MD 20878
Telephone:  240.514.4150
Fax:  240-514-4155

and

Stephen P. New, *pro hac vice pending*
New, Taylor & Associates
P.O. Box 5516
Beckley, WV 25801
Telephone:  304.250.6017
Fax: 304.250.6012

*Attorneys for Plaintiff*