## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement (the "Agreement"), is entered into on **20 December**, 2017 and effective as of January 1, 2018 (the "Effective Date") by and between **RING OF HONOR WRESTLING ENTERTAINMENT, LLC**, a Maryland limited liability company with its principle place of business located at 10706 Beaver Dam Road, Cockeysville, Maryland 21030 (the "Company"), and Kelly Klein (hereinafter referred to as "Performer"). The Performer shall be identified as follows:

Stage Name: Kelly Klein
Address: 12160 Regency Run Ct #8, Cincinnati, OH 45240
E-mail Address: RealKellyKlein@aol.com

### RECITALS

**WHEREAS**, the Company is engaged in the professional wrestling business, including, but not limited to, its live, remote, and/or DVD productions of professional wrestling programming content for viewing on television, cable, etc. and for distribution to third parties (the "Business"); and

**WHEREAS**, the Company wishes to hire the Performer to perform as a professional wrestler in furtherance of the Business during the term of this Agreement, and the Performer is willing to perform as a wrestler on the terms and conditions set forth by this Agreement; and

**WHEREAS**, Performer wishes to acknowledge his understanding that the performance of professional wrestling is an activity inherently dangerous and wishes to make certain waivers, releases of liability and assumptions of risk relating to the same as set forth in this Agreement; and

**WHEREAS**, the Company and Performer intend that an independent contractor relationship be created by this Agreement such that the Company is interested only in the results to be achieved by the Performer and the conduct and control of the work will lie solely with the Performer.

**NOW, THEREFORE**, in consideration of the engagement of the Performer by the Company, the compensation paid to the Performer, the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Term**. This Agreement shall have a term of One Year beginning January 1, 2018 and ending December 31, 2018. Company shall have the right, in its sole discretion, to terminate this Agreement at any time during the term or during any extended term upon thirty (30) days written notice to Contractor. Company shall not have any further obligation to compensate you for any remaining services except for those services rendered prior to the effective date of termination. If Performer is found to be physically or mentally impaired to the extent that Performer is incapable of performing in in-ring wrestling events related to the services hereunder to Company's satisfaction (in the exercise of Company's sole, absolute and arbitrary discretion) for any period of time during the term of this Agreement (a "Performer Impairment"), then, at the sole discretion of Company, the Term of this Agreement shall be extended by a period of time necessary to enable Performer to perform in additional in-ring wrestling events equal to the number of such events missed by such Performer Impairment.

2. **Services**. The Company desires that the Performer provide, and the Performer agrees to provide, the following services: (i) wrestle, perform, and/or make personal appearances at shows and events organized and promoted by the Company or Company's agent; (ii) coordinate and provide

costumes, wardrobe, props, and make-up for the Performer's performances as a professional wrestler at events organized and promoted by the Company or Company's agent; and (iii) provide, create, broadcast, tape or display any media, including internet and social media (i.e. tweeting) as requested by Company. If Performer is not scheduled to perform services for Company, Performer may perform services for other promoters, provided, however, that (i) Performer may not perform services (including, but not limited to, performances, appearances, promotions or media events) if such services are to be shown via television, cable, pay-per-view, internet pay-per-view, video on demand, internet or any other means of broadcast, (ii) Performer may not perform services related to or in connection with World Wrestling Entertainment ("WWE"), WWE's NXT, Impact Wrestling, Dragon Gate USA/EVOLVE, Lucha Underground, FloSports TV or any of their affiliates, successors, or assigns and (iii) Performer may not perform services, performances or participate in any events that conflict in any way with the full and complete performance of Performer's services hereunder, as determined by Company in its sole discretion  The Company will provide the Performer with travel accommodations, which shall include transportation to and from shows and a double occupancy room for the night of each show in which the Performer is expected to provide services.

**2.1  Use of the Performer's Services.** Nothing contained in this Agreement shall be deemed to obligate the Company to use the Performer's services for any particular performance. The Company shall have fully discharged its obligations under this Agreement by paying the Performer the Compensation set forth herein. The Performer agrees to consider in good faith other opportunities which the Company may present to the Performer with other promoters; provided such terms are similar to the terms contained within this Agreement.

**2.2  Relationship of Parties.** The Performer is engaged in an independent business and is an independent contractor. The Performer shall under no circumstances be considered an employee of the Company, nor shall the Performer have any authority to hold himself out or represent (or take any action holding himself out or representing) that he is an employee of the Company. The Company shall have no right to, and shall not exercise control over, the manner, mode, means, or methods which the Performer uses to perform the services required of the Performer hereunder. The Performer and the Company agree that the Performer shall not be entitled to any benefits paid or provided under any employee benefit plan available to any of the Company's employees.

**3.  Compensation.** During the Term, the Company agrees to pay the Performer for all services provided by the Performer the rate of Twelve Thousand Dollars ($12,000) per annum to be paid in monthly installments and prorated for partial months.

**4.  Personal Appearances and Royalties.**

**4.1  Personal Appearances.** The Company may require the Performer to participate in certain personal appearances and meet and greet autograph sessions at dates and times surrounding a show in which the Performer will perform services. The Performer shall receive fifty percent (50%) of the net profit from any such personal appearances and/or meet and greet autograph sessions solely attributable to Performer's personal appearance, which shall be determined as the cost less expenses, multiplied by 50% (e.g., $10 cost of autographed photo, less $2 for photo expenses = $8 x 50% = $4).

**4.2  Royalties.** The Performer shall be paid royalties for t-shirts and "Best of" DVDs featuring the Performer in the amount of twenty percent (20%) of net profits from sales of such items, which payment shall be made quarterly.

**5.  Federal, State, and Local Payroll Taxes.** The Company shall not withhold or pay federal, state, or local income taxes or payroll taxes of any kind on behalf of the Performer or any employees of the Performer. Payment of all such taxes shall be the responsibility and obligation of the

Performer. The Company shall not treat the Performer as an employee with respect to the services performed hereunder for federal, state, or local tax purposes.

6. **Notice to Performer about Tax Duties and Liabilities**. The Performer understands that he or she is responsible to pay, according to law, the Performer's federal and state income taxes, and that the Company is not withholding or paying any portion of the Performer's taxes. The Performer further understands that the Performer may be liable for self-employment (Social Security) tax, to be paid by the Performer according to law. Performer agrees to complete and sign the attached Form W-9.

7. **Responsibility for Workers' Compensation**. No workers' compensation insurance shall be obtained by the Company covering the Performer or any employees of the Performer. The Performer shall comply with the workers' compensation law concerning the Performer and any employees of the Performer.

8. **Termination of Agreement**. This Agreement may be terminated at any time by the Company by providing thirty (30) days advance written notice to Performer. Notice shall be deemed to have been sufficiently given when delivered in accordance with Section 17 of this Agreement. In the event of termination of this Agreement, the Company shall not be liable for, nor shall the Performer be liable to perform, any services or expenses incurred after the effective date of such notice of termination. The Company shall not be liable for payment of any compensation to the Performer for any period following the effective date such of notice of termination.

9. **Release and Grant of Rights**.

    a. During the term of this agreement and thereafter in perpetuity, the Performer grants to the Company the absolute and irrevocable right and permission, with respect to the photographs, film, tape, or any form of media known or to be developed hereafter or use of any existing and/or future content technology utilizing his image or likeness that were created, produced and/or taken of him by or on behalf of the Company in conjunction with any Company production. In addition, the Performer grants to the Company the absolute and irrevocable right and permission to (i) copyright the same in the Company's own name or any other name that the Company may designate or assign; (ii) use and reuse the same, in whole or in part, individually or in conjunction with any other Company production used, produced, or created in any medium for any purpose whatsoever, including, but not limited to the use, production, distribution, and sale of such images of him in conjunction therewith; (iii) use his name in connection with any such use by or on behalf of the Company, in the Company's sole and absolute discretion; (iv) maintain his availability for and shall render his performing services in connection with, the rehearsal, performance and broadcast on behalf of or arranged by the Company ("Performances"); and (v) assign to any other person or entity the rights granted hereunder without the consent or permission of the Performer. The Performer does release and discharge the Company, its officers, shareholders, employees and/or agents, and any photographer, filmmaker, or content creator, their heirs, agents, employees, executives, assigns and any designees (including any agency, client, broadcaster, PR or other publication) from any and all claims and demands arising out of or in connection with the use of such images of the Performer, including but not limited to, any claims for defamation or invasion of privacy resulting from the Performer's appearance in any Company production. Further, the Performer agrees to defend, indemnify, and hold harmless the Company and its officers, shareholders, employees, and their agents from any claims, suits, or liability from any nature caused by or arising out of the Performer's participation or performance in such Company productions.

b. Performer hereby grants, and confirms previous grants to Company, that, during the term of the Independent Contractor Agreement and thereafter in perpetuity, Company has the absolute and irrevocable right and permission to manufacture, distribute, promote, advertise and sell any toy, trading card or any other product ("Products"), including the right to use any photographs, film, tape or any other form of media to create Products bearing the image or likeness of Performer. In addition, Performer grants to the Company, and confirms previous grants to the Company, the absolute and irrevocable right and permission to (i) copyright the same in Company's own name or any other name that Company may designate or assign; (ii) use, reuse, manufacture, distribute, promote, advertise and sell the same, in whole or in part, individually or in conjunction with any other Company production used, produced, or created in any medium for any purpose whatsoever, including, but not limited to the use, production, distribution, and sale of such Products in conjunction therewith; (iii) use Performer's name in connection with any such use by or on behalf of Company, in the Company's sole and absolute discretion; and (iv) assign to any other person or entity the rights described hereunder without the consent or permission of Performer. During the term of the Independent Contractor Agreement, Performer shall be paid royalties for any action figures created in Performer's likeness and bearing Performer's name in the amount of twenty-five percent (25%) of Company's net profits from sales of such action figures, which payment shall be made quarterly. The calculation of Company's net profits from sales of action figures shall be determined by the Company in its sole discretion.

**10.    Music Rights.** Performer hereby grants Company the worldwide and perpetual right and authority to use, publish, and reproduce any audio, written music, written lyrics, and recorded song (collectively, the "Music") which Performer may provide to Company, for Company's use in any and all media, now known or unknown. Performer represents and warrants that (i) Performer has the right to grant such Music rights to Company, and (ii) the Company's use of the Music will not violate the rights of any third parties. The Performer releases and discharges the Company, its officers, shareholders, employees and/or agents, and any photographer, filmmaker, or content creator, their heirs, agents, employees, executives, assigns and any designees, from any and all claims and demands arising out of or in connection with the use of such Music in any Company production. Further, the Performer agrees to defend, indemnify, and hold harmless the Company and its officers, shareholders, employees, and their agents from any claims, suits, or liability of any nature caused by or arising out of the breach of Performer's representations and warranties relating to the Music.

**11.    Broadcast Rights.** The programs on which the Performer provides services and the Performer's performances on such programs may be broadcast, produced or otherwise transmitted or disseminated by the Company during this Agreement, and at any time thereafter, in whole or in part, without additional Compensation to the Performer. Any of the programs on which the Performer appears may, at the sole discretion and expense of the Company, be recorded and used for promotion, public service performances, sales, reference, files, syndication, or any other similar or like purpose. The sound element of any program may be deleted, modified or substituted in connection with any translation rights of the Company or otherwise in the use of any recording hereunder anywhere in the world.

**12.    Assignment of Broadcast Rights.** The Performer hereby assigns and conveys to the Company any and all proprietary rights in or to any material furnished by the Performer to the Company under this Agreement, including without limitation Music rights described in Section 10. The Performer shall not have any right, title, or interest in any material embodied in any of the programs in which the Performer appears, regardless of any contributions which were made by the Performer to said programs. The Company shall have the right to destroy any of the aforementioned programs or materials or to sell lease, give, or transfer same to any person, corporation, partnership or entity.

13. **Exploitation of Broadcast Rights**. The Company shall retain the right to sell, syndicate, or license for broadcast or other transmission or dissemination programs in which the Performer appears or the Performer's voice, sobriquet, biography, recorded performance, picture, portrait, brief caricature, or likeness is used. The Company may license said programs for broadcast or other transmission or dissemination without additional compensation to the Performer.

14. **Representations and Warranties of the Performer**. The Performer represents and warrants to the Company that he is free to enter into this agreement and to grant to the Company the rights granted herein; that his entering into this Agreement does not violate or infringe upon the any other agreement he has entered into nor the rights of others; that no consent of any other person or entity is required for the Performer to enter into this Agreement and that he is not bound by any conflicting obligations which will prevent or interfere with his full performance of the terms of this Agreement. The Performer further agrees to indemnify and hold harmless the Company, its officers, directors shareholders, agents, its successors and assigns from any and all claims, actions, liabilities, damages, judgments, costs and fees, including reasonable attorney's fees arising out of any breach or alleged breach by the Performer of any representation or warranty or any other obligation set for the in this Agreement or any amendment or addendum thereof.

15. **Breach**. The Company shall have the right to terminate this Agreement, its obligation to make any payments hereunder, and Performer's services hereunder in the event the Performer (i) is under the influence of, uses, possesses or traffics any illegal drugs; (ii) is late or absent on more than two (2) occasions; (iii) is found to be physically or mentally impaired to the extent that the Performer is incapable of performing services hereunder to the Company's satisfaction (in the exercise of its sole, absolute and arbitrary discretion); (iv) is charged or found guilty of *any* felony or found guilty of any misdemeanor involving moral turpitude; (v) publicly denigrates the Company, its parent, affiliates, their officers, directors, employees, licensees, assigns or the Performer's participation in any program; (vi) fails to conduct or finish a performance in accordance with the Company's direction, (vii) commits any act which (in the exercise of the Company's sole, absolute and arbitrary discretion) negatively or adversely affects the reputation or performance of the Company, its parent, affiliates, licensees, or assigns or the value or integrity of the Company's programs, videos, or merchandise; and/or (viii) jeopardizes the FCC license of any broadcast station owned or programmed by Sinclair Broadcast Group, Inc. In the event of termination of this Agreement due to the Performer's breach, the Company shall have no further obligation to the Performer hereunder subject only to the Company's obligation to pay any Compensation for services fully performed prior to the effective date of termination (specifically subject to offset for any damages incurred or alleged to have been incurred by the Company as the result or consequence of such breach).

16. **Non-Competition**. As material consideration for the Company entering this Agreement, except as permitted by Section 2 of this Agreement, the Performer agrees that (i) during the term of this Agreement, Performer shall not provide any services to any other professional wrestling organization (e.g., WWE, TNA, MTV), or third party intermediaries on behalf of any such wrestling organization, including promoters, whether directly or indirectly through such intermediary, including, but not limited to, performance in any live or staged wrestling events, promotions, advertising etc. to be utilized for television, cable, pay-per-view, internet pay-per-view, video on demand, internet or any other means of broadcast use or any other public appearances related to the same, (ii) during the term of this Agreement, Performer shall not participate in any live or taped appearances, promotions or any form of media, including but not limited to photographs, print, radio, television, cable, pay-per-view, internet pay-per-view, video on demand, internet or any other means of broadcast use (whether or not related to wrestling) without the prior written consent of the Company, and (iii) for a period of six (6) months from the date of termination of this Agreement due to the Performer's breach of the Agreement, Performer shall not provide any services to any print, radio, television, cable, pay-per-view, internet pay-per-view, video on demand, internet or any other means of entertainment media or distribution. The Performer agrees that because of the special, unique, and extraordinary nature of the obligations of the Company and the

Performer, which are the subject matter of this Agreement, the Performer's breach of this Agreement shall cause the Company irreparable injury which cannot be adequately measured by monetary relief. Accordingly, the Company shall also be entitled to injunctive and other equitable relief against the Performer to prevent any breach or default by the Performer hereunder without the necessity of proof of actual damages and such injunction or equitable relief shall be without prejudice to any other rights, remedies, or damages which the Performer may be legally entitled to seek.

**17. Notices.** Unless written notice of change of address is given by one party to the other party, any notices to either party (and any and all statements, royalties or other payments which may become due to the Performer) shall be mailed to the addresses set forth for such party on the first page of this Agreement ,. All notices (excluding statements and/or payments) shall be sent by Certified Mail, return receipt requested, courier, or overnight mail with notice of receipt, postage pre-paid, and shall be deemed sent on the date of mailing or delivery by courier.

**18. Confidentiality.** Other than as may be required by applicable law, government order, or regulations, or by order or decree of a court of law, all information contained in this Agreement and obtained by the Performer in performing services hereunder shall be held strictly confidential and shall not be divulged by the Performer to any person or entity whatsoever at any time during the Term or after the termination of this Agreement without the Company's express prior written permission. Violation of this Section 18 during the Term of this Agreement will be considered a breach of this Agreement.

**19. Waiver and Release of Liability, Assumption of Risk, and Indemnity Agreement. By signing this Agreement and in consideration of the opportunities provided to the Performer by the Company to engage in professional wrestling and payment received for performing in the art of professional wrestling, the Performer hereby acknowledges his understanding that the performance of professional wrestling is an activity inherently dangerous which is subject to a high degree of risk of serious bodily injury and/or death, as well as property damage and states as follows:**

I HEREBY WAIVE, DISCHARGE, AND RELEASE ANY AND ALL CLAIMS I HAVE, MAY HAVE, OR THAT I MAY EVER HAVE IN THE FUTURE AGAINST THE COMPANY, ITS PARENT, AFFILIATES, AGENTS, OFFICERS, EMPLOYEES, DIRECTORS INSURERS, AND ANY AND ALL LICENSEES, ASSIGNEES AND AUTHORIZED THIRD PARTIES REPRODUCING, BROADCASTING OR OTHERWISE USING OR EXPLOITING THE COMPANY'S MERCHANDISE, PROGRAM(S), OR RECORDINGS (COLLECTIVELY, THE "RELEASED PARTIES") AND ALL OF THEIR HEIRS, SUCCESSORS AND ASSIGNS THAT MAY ARISE FROM OR RELATE IN ANY WAY TO MY PARTICIPATION IN THE ACTIVITY OF PROFESSIONAL WRESTLING OR IN ANY RELATED ACTIVITIES, WHETHER CAUSED BY NEGLIGENCE OR OTHERWISE. IN THIS REGARD, I ALSO AGREE ON MY OWN BEHALF, AS WELL AS ON BEHALF OF MY PERSONAL REPRESENTATIVES, MY ASSIGNS, MY HEIRS, AND MY NEXT OF KIN THAT I WILL NOT FILE SUIT OR ASSERT ANY DEMANDS OR CLAIMS FOR LIABILITY OR DAMAGES FOR ANY AND ALL LOSSES, INJURIES, OR DAMAGES OF ANY KIND ARISING OUT OF MY PARTICIPATION IN THE ACTIVITY OF PROFESSIONAL WRESTLING OR RELATED ACTIVITIES, WHETHER CAUSED BY NEGLIGENCE OR OTHERWISE.

I HEREBY ASSUME FULL RESPONSIBILITY FOR ANY AND ALL RISK OF PERSONAL OR BODILY INJURY, DEATH, OR PROPERTY DAMAGE, NOW AND FOREVER, ARISING OUT OF OR RELATED TO PARTICIPATION IN THE ACTIVITY OF PROFESSIONAL WRESTLING, WHETHER FORESEEN OR UNFORESEEN AND WHETHER CAUSED BY NEGLIGENCE OR OTHERWISE. I HEREBY SEPARATELY AGREE TO DEFEND, INDEMNIFY, AND SAVE AND HOLD HARMLESS THE RELEASED PARTIES AND ALL OF THEIR HEIRS, SUCCESSORS, AND ASSIGNS FROM ANY AND ALL LOSS, LIABILITY, DAMAGE, FEES, EXPENSES, OR COSTS THAT THEY MAY INCUR, NOW AND

FOREVER, IN CONNECTION WITH ANY PERSONAL OR BODILY INJURY TO ME, MY DEATH, OR DAMAGE TO MY PROPERTY THAT ARISES OUT OF OR MAY BE ATTRIBUTABLE IN ANY MANNER TO MY PARTICIPATION IN THE ACTIVITY OF PROFESSIONAL WRESTLING.

I HEREBY ACKNOWLEDGE THAT THIS WAIVER AND RELEASE OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNITY AGREEMENT EXTENDS TO ALL ACTS OF NEGLIGENCE, INCLUDING NEGLIGENCE IN PROVIDING ASSISTANCE, AND IS INTENDED TO BE AS BROAD AND INCLUSIVE AS PERMITTED BY LAW. IF ANY PORTION HEREOF IS HELD INVALID, IT IS AGREED THAT THE BALANCE HEREOF SHALL, NOTWITHSTANDING, CONTINUE IN FULL LEGAL FORCE AND EFFECT.

I have read this Waiver and Release of Liability, Assumption of Risk, and Indemnity Agreement and fully understand that I have given up substantial rights by signing below. I am aware of its legal effect and consequences, and I have signed it freely and voluntarily without any inducement, assurance, or guarantee being made to me, and I intend my signature to be my complete and unconditional release of all liability to the greatest extent that is allowed by law. This Waiver and Release of Liability, Assumption of Risk, and Indemnity Agreement shall be binding upon and shall inure to the benefit of the Company, and its heirs, successors, agents, and assigns.

20.  **Arbitration Required**. Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the following provisions:

20.1  **Disputes Covered**. The agreement of the parties to arbitrate covers all disputes of every kind relating to or arising out of this Agreement, the performance of the Services, and/or the relationship between the Company and the Performer. Disputes include actions for breach of contract with respect to this Agreement, as well as any claim based upon tort or any other causes of action relating to this Agreement, and claims based upon a federal or state statute. The decision of the arbitrator shall be final and binding on the parties.

20.2  **Location**. The location for the arbitration shall be Baltimore County, Maryland. With respect to any action brought or litigation initiated in any way connected with the arbitration clause, either pre-arbitration, during arbitration, or after arbitration, exclusive jurisdiction and venue shall reside with the Circuit Court of Maryland for Baltimore County.

20.3  **Law**. The governing law for the arbitration shall be the law of the State of Maryland, without reference to its conflicts of laws provisions.

20.4  **Selection of Arbitrator**. Arbitration shall be conducted by one arbitrator selected from among the following individuals: Hilary Caplan, Joseph H. H. Kaplan, Norris Byrnes, Stanley Mazaroff, and Edward Gutman. If the Company and the Performer are unable to agree from among the individuals herein named, then they shall alternately strike names from this list, with the Performer taking the first strike. After each has struck two names, the remaining name shall be the arbitrator. If the parties are unable to select an Arbitrator pursuant to this process due, for instance, to a conflict of interest on the part of the panel of arbitrators, selection shall be made pursuant to the Maryland Uniform Arbitration Act, with the restriction that the individual selected by the court must be a retired judge.

20.5  **Substantive Law**. The arbitrators shall be bound by and shall strictly enforce the terms of this Agreement and may not limit, expand, or otherwise modify its terms. The arbitrators shall be bound to honor claims of privilege or work-product doctrine recognized at law.

20.6  **Decision**. The arbitrator's decision shall provide in writing a reasoned basis for

the resolution of each dispute and for any award, as well as the finding and award.

        **20.7**    **Payment of Costs, Fees, and Expenses**. The arbitrator shall award to the prevailing party the fees, costs, and expenses of the arbitration, including the prevailing parties' reasonable attorneys' fees and expert witness fees, and the fees and expenses of the arbitrator; the reasonableness of such fees, costs, and expenses to be determined by the arbitrator. In the event a party prevails only in part, or the parties each prevail in part, the arbitrator may apportion reasonable fees and expenses among the parties as the arbitrator deems fair and just.

        **20.8**    **Remedies; Award**. The arbitrators shall have power and authority to award any remedy or judgment that could be awarded by a court of law in the State of Maryland under similar circumstances. The award rendered by arbitration shall be final and binding upon the parties, and judgment upon the award shall be entered in the Circuit Court of Maryland for Baltimore County. The parties hereto consent to entry and enforcement of that judgment in any court of competent jurisdiction in the United States.

        **21.**    **Assignment**. This Agreement shall be binding upon the parties hereto, their respective heirs, personal representatives, executors, administrators, successors, and permitted assigns. The Company may in its absolute and complete discretion assign this Agreement (and any of its rights, duties, responsibilities, covenants, representations, or warranties under this Agreement) to any successor. The Performer has no right to assign this Agreement (or any of his rights, duties, responsibilities, covenants, representations, or warranties under this Agreement) to any other party, and any attempted assignment by the Performer shall be void.

        **22.**    **Governing Law**. This Agreement is made in Baltimore, Maryland and shall be governed, interpreted, and construed according to the laws of the State of Maryland. In addition, any disputes arising under this Agreement shall be governed by and determined in accordance with Maryland law.

        **23.**    **Entire Agreement and Modification**. This Agreement sets forth the entire agreement of the parties concerning the engagement of Performer by the Company. This Agreement amends, supersedes, and replaces all prior agreements and understandings (including without limitation, the Original Agreement, which is hereby terminated), written or verbal, formal or informal, among the parties with respect to the hiring of the Performer by the Company, including the subject matter of this Agreement. The Performer expressly represents, warrants, and admits that, in agreeing to the terms hereof, he or she has not relied on any representation from any source other than those contained in this Agreement itself. Only a written instrument duly executed by each party hereto may modify this Agreement.

        **24.**    **Costs of Enforcement**. In the event that either party institutes an action to enforce or interpret any provision of this Agreement, the non-prevailing party shall pay to the prevailing party all costs and expenses incurred (including a reasonable sum for attorneys' fees and all expert witness fees) incurred by the prevailing party in connection with any such action.

        **25.**    **Conflicts of Interest**. The Performer shall not act as an agent for, consultant to, or as an officer, employee, or other representative for any of the Company's competitors or prospective competitors, without giving prior written notification to the Company and the consent of the Company, which consent may be withheld by the Company in its sole discretion. The Performer hereby warrants that there is no conflict of interest between the Performer's other employment, if any, or other contracts, if any, and the activities to be performed hereunder. The Performer shall advise the Company if a conflict of interest arises in the future.

        **26.**    **Inventions, Patents, Trademarks**. The terms "work," "trademark," and "invention" include anything created for the Company by the Performer, whether alone or with others, and whether

those others be independent contractors, employees, or agents of the Company.

**26.1** The term "work" includes, but is not limited to, any and all audio or visual DVDs, recordings of any kind, MP3s, books, writings, designs, models, drawings, photographs, physical property, reports, etc., that are protectable under Title 17 of the U.S. Code.

**26.2** The term "trademark" means any name, word, phrase, logo, design, or other graphic depiction generated during the performance of this Agreement that is or can be used to describe either a product or service of the Company.

**26.3** The term "invention" means any designs, processes, inventions, or discoveries that may be patentable or otherwise protectable under Title 35 of the U.S. Code.

**27.  Work Made for Hire.** During the performance of this agreement, the Performer may create certain works for Company that may be copyrighted under the laws of the United States. To the extent that any such works are created, the Performer will be considered to have created a work made for hire as defined in 17 U.S.C. § 101, and the Company shall have the sole right to the copyright. If any work created by the Performer does not qualify as a work for hire, the Performer agrees to assign his or her right in the work to Company, as provided below.

**27.1  Title to Works, Trademarks, and Inventions Produced.** It is understood and agreed that the entire right, title, and interest throughout the world to all works, trademarks, and/or inventions that are conceived of, prepared, procured, generated, or produced, whether or not reduced to practice, by the Performer, either solely or jointly with others during the course of, in connection with, or as related to the performance of this Agreement, shall be and hereby are vested and assigned by the Performer to the Company. The Performer agrees to execute any and all documents prepared by the Company and to do all other lawful acts as may be required by the Company to establish, document, and protect such rights. The Performer has acquired or shall acquire from each of his or her employees, consultants, and subcontractors, if any, the necessary rights to all such works, trademarks, and inventions produced by such employees, consultants, and subcontractors, within the scope of their employment by the Performer in performing services under this Agreement. The Performer shall obtain the cooperation of each such employee to secure to the Company or its nominees the rights the Company may acquire in accordance with the provisions of this clause.

**28.  Counterparts.** This Agreement may be executed in multiple counterparts or in duplicate, and when so executed by the Company and the Performer shall constitute one agreement.

**29.  Independent Legal Counsel.** The Performer acknowledges that this Agreement was prepared by counsel for the Company. The undersigned understand that the Performer and the Company may be adverse to each other regarding terms and conditions set forth in this Agreement. The Performer acknowledges that counsel to the Company has not represented the Performer in connection with the preparation of this Agreement nor provided the Performer with any legal or other advice in connection with this Agreement and that the Performer has been advised and urged to seek independent professional legal, tax, and financial advice in connection with deciding to enter into this Agreement.

**30.  Severability.** If any one or more of the provisions contained in this Agreement shall be invalid, illegal, or unenforceable in any respect under applicable law, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be ineffective or impaired thereby.

**31.  Headings.** The headings in this Agreement are for convenience of reference only and shall be given no effect in the construction or interpretation of this Agreement.

32. **No Authority to Bind Company**. The Performer has no authority to enter into contracts on behalf of or bind the Company. This Agreement does not create a partnership between the parties.

33. **Representations to Others**. Neither the Performer nor the Company shall represent to others that the relationship between them is other than that stated in this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

Ring of Honor Wrestling Entertainment, LLC:

By: *Daniel*
Name: David R. Bochenek
Title: Authorized Signer

Performer:

*Kelly Klein*   Dec. 20, 2017
Kelly Klein