IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KELLY KLEIN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:21-cv-00476-PX |
| SINCLAIR BROADCAST GROUP, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending before the Court in this employment dispute are Plaintiff Kelly Klein ("Klein")'s motion for leave to conduct limited discovery (ECF No. 13) and Defendants Sinclair Broadcast Group, Inc. and Ring of Honor Wrestling Entertainment, LLC ("Defendants")'s second motion to compel arbitration and dismiss or stay proceedings (ECF No. 16).[1] For the following reasons, the Court DENIES the motion for leave to conduct limited discovery and GRANTS Defendants' second motion to compel arbitration and dismiss or stay proceedings.

### I.   BACKGROUND[2]

In 2006, Klein made her debut as a professional wrestler. ECF No. 12 ¶ 10. During her time on the wrestling circuit, Klein was dubbed "The Gatekeeper" and "Pretty Badass," and was known for her signature maneuver, the "End of the Match" guillotine choke. *Id.* ¶ 11. Sometime in 2015, Klein first appeared as a member of Defendant Ring of Honor Wrestling Entertainment ("Ring of Honor")'s "Women of Honor" female wrestling cast. *Id.* ¶¶ 10–11.

---

[1] Also pending before the Court is Defendants' first motion to compel arbitration and dismiss or stay proceedings. ECF No. 11. That motion is DENIED as MOOT because it is substantively the same as Defendants' renewed motion at ECF No. 16.

[2] The facts alleged in the Complaint are taken as true and construed most favorably to Klein.

A. **The Employment Agreement and Amendment**

Klein and Ring of Honor evidently did not formalize their affiliation until January 1, 2018, when the parties entered into a one-year "Independent Contractor Agreement" ("Agreement") that ran through December 31, 2018. ECF No. 12 at ¶ 19.[3] Under the Agreement, Ring of Honor could terminate the contract at any time with 30 days' advance written notice. ECF No. 12 at 33 (Amended Complaint Exhibit A). Klein had no similar termination option. *Id.* At the end of 2018, the parties amended the Agreement, renewing the contract terms for 2019 (the "Amendment"). *Id.* at 44 (Amended Complaint Exhibit B). The Amendment, however, gave Klein a one-time opportunity on June 30, 2019 to terminate the contract unilaterally. *Id.* The Amendment also provided that at the end of 2019, the Agreement converted to "a month-to-month Agreement," giving either party the option to terminate the contract with 30 days' written notice. *Id.*

Defendants drafted both the Agreement and Amendment. Klein did not have legal counsel at the time and was relatively inexperienced in negotiating employment contracts. ECF No. 12 ¶ 46. Yet she successfully negotiated material terms such as her compensation and the June 30, 2019 option to terminate. ECF No. 12 ¶ 58.

Under the Agreement, Klein had to perform exclusively for Ring of Honor, participate in televised wrestling performances, and appear at meet-and-greet autograph sessions. *See generally* ECF No. 12 at 33–42 (Exhibit A). Klein also agreed to release certain music and broadcasting rights to Ring of Honor, along with particular "image or likeness" rights. *See id.* at 36–37. In exchange, Ring of Honor agreed to pay Klein $12,000.00; provide transportation and

---

[3] Because Defendants do not question the accuracy or authenticity of the Agreement and Amendment, they are incorporated by reference into the Amended Complaint. ECF No. 12 at 33–45 (Amended Complaint Exhibits A & B). *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

lodging for wrestling matches; compensate her for personal appearances; and pay royalties on merchandise sales and action figures that featured her likeness. *Id.* at 34–37.

Especially relevant here, the Agreement includes a mandatory arbitration provision that applies to "[a]ny controversy or claim arising out of or relating to" the Agreement, including the arbitrability of any given claim. ECF No. 12 at 39 (Exhibit A). The arbitration provision further specifies that arbitration must occur in Baltimore County Maryland; that Maryland law is the applicable substantive law; that the arbitrator must be chosen from a list provided in the Agreement; and that the arbitrator must "strictly enforce the terms of this Agreement, and may not limit, expand, or otherwise modify its terms." *Id.* The arbitration provision also includes a fee-shifting clause that requires the arbitrator to award the prevailing party reasonable "fees, costs, and expenses," including attorneys' fees, expert witness expenses, and costs for the arbitrator. *Id.* at 40.

### B. Events Giving Rise to this Lawsuit

As Klein describes it, her working conditions at Ring of Honor were unsafe, unhealthy and discriminatory. *See* ECF No. 12 ¶¶ 60, 72, 73, 77. On April 7, 2018, Klein was kicked in the head during a match, causing injuries so severe she could not deliver the "scripted ending of the match." *Id.* ¶ 63. Defendants provided no aid. Next, when Klein broke a tooth during another match, Defendants merely reimbursed her dental expenses. *Id.* ¶ 64.

Disturbed by the lack of attention to her welfare, Klein voiced concerns to Ring of Honor manager and producer, Todd Sinclair ("Mr. Sinclair"). *See* ECF No. 12 ¶ 65. On January 30, 2019, Klein conveyed to Mr. Sinclair that she and others were wary of working with "unsafe" performers. *Id.* ¶ 66. Mr. Sinclair assured Klein that those performers were only booked for a few more matches and, after that, Defendants would consult with Klein before scheduling her to

wrestle any "problematic performers." *Id.* Despite these assurances, on April 6, 2019, Klein was again kicked in the head during a match—this time so hard that she was left dazed and unconscious. *Id.* ¶¶ 66, 67. She received another blow to the head on October 26, 2019, leaving her unable to speak coherently, and medical personnel did not arrive until an hour after the incident. *Id.* ¶ 70.

While working for Ring of Honor, Klein also learned that her male counterparts made significantly more money, and that at least one was provided a single-occupancy hotel room for work-related travel. *See* ECF No. 12 ¶¶ 72, 78. On November 3, 2018, Defendants met with the female wrestlers to discuss the "lack of storylines; the way women were portrayed; the amount of television exposure for women wrestlers, and why [women] were not being represented more in the marketing" of Defendants' wrestling programs. *Id.* ¶ 77. But it does not appear that Defendants ever fully addressed these issues. *See id.* ¶ 72.

Klein also alleges that she was sexually harassed by one of the male Ring of Honor wrestlers, Jamar Shipman. *See* ECF No. 12 ¶¶ 18, 73. Shipman leered at her, asked whether she had a boyfriend, and probed whether she was staying alone in her hotel room. *Id.* ¶ 73. After Klein complained about Shipman, she was removed from training sessions where he was present. *Id.* ¶¶ 75–76, 80–81. The Ring of Honor Human Resources department rebuffed Klein's complaints, informing her that "HR was only for employees and she was not an employee." *Id.* ¶ 82. Less than two months later, Ring of Honor terminated Klein's contract. *Id.* ¶ 83.

### C.     This Lawsuit

Klein filed her Complaint in this Court on February 24, 2021, asserting claims for breach of contract, harassment, "abusive discharge," and related declaratory relief. *See* ECF No. 1. Defendants moved to compel arbitration and dismiss or stay proceedings (ECF No. 11). In

response, Klein filed an Amended Complaint and moved for leave to conduct limited discovery (ECF Nos. 12, 13). Defendants have opposed Klein's motion for limited discovery (ECF No. 17) and filed a renewed motion to compel arbitration and dismiss or stay proceedings (ECF No. 16). Klein has not directly responded to either of Defendants' motions to compel arbitration.

## II.     STANDARD OF REVIEW

Defendants move to compel arbitration and dismiss or stay proceedings in accordance with the Federal Arbitration Act ("FAA"). Federal Arbitration Act, 9 U.S.C. § 1. Some confusion surrounds the applicable standard of review for the motion. On the one hand, a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) customarily tests the sufficiency of the Complaint, and claims will survive challenge provided the Complaint pleads sufficient facts to make the claims plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On the other hand, a motion to compel arbitration pursuant to the FAA requires the Court to find that "the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C § 4.

The United States Court of Appeals for the Fourth Circuit has clarified that the standard of review as to a motion to compel arbitration "is akin to the burden on summary judgment." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015); *see also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 n.3 (4th Cir. 2016) (quoting *Chorley Enters.*, 807 F.3d at 564). Where the parties merely disagree as to the interpretation of the relevant agreement but do not dispute any facts, the motion must be decided as a matter of law. *Chorley Enters.*, 807 F.3d at 564. Thus, "if the parties agreed in writing to arbitrate the dispute," the Court must compel arbitration. *See Alston v. Navy Fed. Credit Union*, No. GJH-21-00040, 2021 WL 4478698, at *7 (D. Md. Sept. 30, 2021). "When deciding whether the parties

agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).[4]

### III.     ANALYSIS

#### A.     Klein's Motion for Leave to Conduct Limited Discovery

Because the motion to compel arbitration is treated as one for summary judgment, Klein's motion to compel limited discovery must be considered in this same context. *See, e.g.*, *Palmer v. Mary Jane M. Elliot, P.C.*, No. 20-13209, 2021 WL 1626355, at *2 (E.D. Mich. Apr. 27, 2021); *Heath v. Virginia Coll., LLC*, No. 17-366, 2018 WL 4521027, at *4 (E.D. Tenn. Sept. 21, 2018). Accordingly, pursuant to Federal Rule of Civil Procedure 56(d), Klein must demonstrate "by affidavit or declaration . . . that [she] cannot present facts essential to justify [her] opposition" to the motion for summary judgment. *See* Fed. R. Civ. P. 56(d). Klein must identify with some particularity the additional discovery needed to defeat the motion to compel arbitration. *Lamb v. Modly*, No. 03469-PX, 2021 WL 1198158, at *7 (D. Md. Mar. 30, 2021).

Klein asks to depose a "corporate representative of Defendant Ring of Honor" because it would generally "assist [her] in meeting her burden of proof." *See* ECF No. 13-1. This overbroad averment does little to satisfy the requirements of Rule 56(d). Nor does Klein submit "by affidavit or declaration" which facts she believes, in good faith, discovery would unearth to advance her opposition to arbitration. *See* Fed. R. Civ. P. 56(d). Because Klein simply has not demonstrated that the requested discovery could create a genuinely disputed issue of material fact on the question of arbitrability, her motion is denied. *See Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) ("A non-moving party's Rule 56(d) request for

---

[4] The parties agree that Maryland common law applies here. *See* ECF No. 13-1 at 3; ECF No. 16-1 at 4.

additional discovery is properly denied 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'") (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 953 (4th Cir. 1995)).

### B.     Defendants' Motion to Compel Arbitration

Turning next to Defendants' motion to compel arbitration, to prevail, the movant must demonstrate the existence of (1) a dispute between the parties; (2) a written arbitration provision that purports to cover the dispute; (3) a relationship between the transaction and interstate or foreign commerce; and (4) the failure of a party to arbitrate the dispute. *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). If the movant satisfies this burden, the Court must next determine whether it should stay the federal case pending the outcome of arbitration. 9 U.S.C. § 3. Or, where all claims in the Complaint are subject to arbitration pursuant to the pertinent arbitration provision, the Court may dismiss the action altogether. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001).

The parties do not dispute the existence of the Agreement or that the scope of the arbitration provision covers the claims in this case. *See* ECF No. 13-1 at 2; ECF No. 16-1 at 2–4. Accordingly, the only challenged element is the enforceability of the provision itself.

Klein singularly argues that the arbitration provision must be voided as unconscionable. *See* ECF No. 12 at 19–21; *see also* ECF No. 13-1 at 4. A contractual provision may be void as "unconscionable" where a party lacked meaningful choice in agreeing to the provision, and the contractual terms unreasonably favor the other party. *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005) (citing Black's Law Dictionary 1560 (8th ed. 2004)). The movant bears the burden of demonstrating two aspects of unconscionability—procedural and substantive—which render enforcement of the provision wholly inequitable. *Id.* at 427 (quoting *Carlson v. General Motors*

7

*Corp.*, 883 F.2d 287 (4th Cir. 1989)); *see also Baron v. Morrison*, No. JKB-19-1255, 2019 WL 5456796, at *2 (D. Md. Oct. 24, 2019).  The Court considers each aspect separately.

### 1. Procedural Unconscionability

Procedural unconscionability relates to the process by which the contract was made, and it resembles the common law defenses of fraud and duress.  *Carlson*, 883 F.2d at 296 (quoting J. White & R. Summers, *Uniform Commercial Code* § 4–3, at 187 (3d ed. 1988)).  An arbitration provision is procedurally unconscionable if one of the parties lacked a meaningful choice during the making of the contract.  *See Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245 (D. Md. 2011).  The Court of Appeals of Maryland has explained that a contract may be procedurally unconscionable where its material terms were buried in fine print or were written in convoluted language.  *Walther*, 386 Md. at 427.

Klein avers that, unlike Defendants, she was not a sophisticated dealmaker.  ECF No. 12 ¶¶ 45–48, 58, 59.  Klein highlights that because she earned a modest income as an independent wrestler, softball coach, and pre-school teacher, she could not afford counsel to assist her in negotiations with Ring of Honor.  ECF No. 12 ¶¶ 47–49.  Klein also avers that she failed to appreciate the financial implications of the arbitration provision's fee-shifting clause.  ECF No. 12 ¶ 56.  Moreover, opportunities in the world of professional wrestling were in short supply, which lessened substantially Klein's bargaining power.  ECF No. 12 ¶ 59.

To be sure, Defendants maintained a superior bargaining position compared to Klein.  But this alone is not dispositive.  When assessing whether an arbitration clause is procedurally unconscionable, the Court must determine whether the agreement was reached in a manner that was egregiously unfair.  *See Ringdahl v. Afsharjavan*, No. 18-01006-PX, 2019 WL 5390853, at *3 (D. Md. Oct. 22, 2019).  The evidence here does not meet this high bar.

To begin, the arbitration provision was clearly and obviously identifiable to a layperson such as Klein, and reads: "[a]ny controversy or claim arising out of or relating to this Agreement shall be settled by arbitration . . . ." *See* ECF No. 12 at 39 (Exhibit A). The provision next spells out, in equally plain language, the time, place, manner, and conditions under which arbitration shall take place. *See id.* It is, in short, easy to find, read, and understand. *See id.* at 39–40.

This Court also cannot conclude that the Agreement was an adhesive contract, presented to Klein on a "take it or leave it" basis. *See* ECF No. 12 ¶ 87. Indeed, Klein admitted that she negotiated to her advantage other key provisions in the Agreement. *Id.* ¶ 58. Nor do Defendants' comparatively greater resources render the provision procedurally unconscionable, as Klein urges. Courts routinely uphold arbitration agreements where the party seeking arbitration arguably has even greater "market power" than Defendants do in this case. *See, e.g.*, *Freedman v. Comcast Corp.*, 190 Md. App. 179, 209 (2010); *Baron*, 2019 WL 5456796, at *1 (D. Md. Oct. 24, 2019). Consequently, even accepting as true each of Klein's factual averments, the undisputed record reflects that this arbitration provision is not procedurally unconscionable.

### 2. Substantive Unconscionability

As to substantive unconscionability, the Court must focus on the terms of the challenged provision to determine whether the provision is so one-sided or draconian that it must be voided as against public policy. *See Walther*, 386 Md. at 427. Klein avers that the arbitration provision is substantively unconscionable because it does not explain the rules governing any future arbitration and it imposes unduly prohibitive arbitration costs. ECF No. 12 ¶¶ 89, 90. Klein further suggests that the arbitration provision is internally inconsistent insofar as it requires "strict compliance" with the Agreement while also requiring the arbitrator to construe the Agreement according to Maryland law. *Id.* ¶ 91. Lastly, according to Klein, the arbitration

provision does not clearly state whether the Maryland Uniform Arbitration Act governs the arbitration process. *Id.* ¶ 95.

Viewed in the light most favorable to Klein, these supposed defects do not render the arbitration provision substantively unconscionable. First, contrary to Klein's representation, the arbitration provision does set out the rules with sufficient clarity. The provision makes clear that it covers "all disputes" arising from the Agreement, that arbitration will be governed by Maryland law, that arbitration shall take place in Baltimore County, and it even includes a list of possible arbitrators identified by name. *See* ECF No. 12 at 39–40 (Exhibit A). Similarly, the arbitration provision explains in some detail how arbitration costs will be apportioned*, see id.* at 40, and accords the arbitrator discretion to award the prevailing party only *reasonable* fees. *Id.* Moreover, as Defendants correctly note, the cost-shifting clause is not a one-sided condition but is mutually applicable regardless of which party prevails. *See* ECF No. 16-1 at 11.

Lastly, to the extent that the terms of the Agreement conflict with one another or are ambiguous, it will be left to the arbitrator, not this Court, to reconcile those conflicts and ambiguities. *See Rose*, 816 F. Supp. 2d 245, 258 (D. Md. 2011). The same is true for Klein's substantive argument that she is not an independent contractor and regarding any ambiguity as to whether the Maryland Uniform Arbitration Act applies. *See id.* (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This is so because the parties clearly agreed that questions regarding the scope of the arbitration provision will be decided by the arbitrator. *See* ECF No. 12 at 39–40. Simply stated, the provision is not substantively unconscionable.

### C. Enforcement of the Arbitration Provision

Klein has failed to offer this Court any other ground to void the arbitration provision in

the Agreement. But Klein also has not willingly engaged in arbitration. The Court will, as a result, grant Defendants' motion to compel arbitration consistent with the terms of the arbitration provision. Further, because the claims raised here all arise from Klein's work performed under the Agreement, and thus will be reached in arbitration, the Court sees no value in staying this action. It instead will dismiss the Complaint entirely.

## IV. CONCLUSION

Based on the foregoing, Klein's motion for leave to conduct limited discovery (ECF No. 13) is DENIED, and Defendants' renewed motion to compel arbitration (ECF No. 16) is GRANTED. The Clerk is also DIRECTED to CLOSE this case.

November 16, 2021 /s/
Date Paula Xinis
United States District Judge